MEMORANDUM OPINION AND ORDER
 

 FINCH, Chief Judge.
 

 Pro se
 
 Petitioner, RONALD DE ALTIER PICKARD, has moved to vacate, set side, or correct sentence pursuant to 28 U.S.C. § 2255, and the government filed an opposition thereto. Given Petitioner’s
 
 pro se
 
 status, the Court construes his contentions liberally.
 
 See Haines v. Kerner,
 
 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Where, as here, the record is sufficient to allow a determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed.
 
 See
 
 Rules Governing Section 2255 Proceedings, Rule 8;
 
 United States v. Headley,
 
 923 F.2d 1079, 1083 (3d Cir.1991).
 

 I. FACTS
 
 [1]
 
 AND PROCEDURAL HISTORY
 

 Petitioner was found guilty of deprivation of rights under color of law pursuant to 18 U.S.C. § 242 (Counts 2, 15, 16
 
 *DCCLXXXI
 
 and 40), using or carrying a firearm during a crime of violence pursuant to 18 U.S.C. § 924(c) (Count 17), oppression pursuant to 14 V.I.C. § 703(1) (Count 18), and assault with a deadly weapon pursuant to 14 V.I.C. § 297(2) (Count 19). Petitioner moved for judgment of acquittal or, in the alternative, for a new trial based upon the following arguments:
 

 1) that the evidence was insufficient to establish the elements of the offenses charged, and the verdict was against the weight of the evidence; and
 

 2) that he was prejudiced by the prosecutor’s improper closing arguments urging the jury to send a message to the Virgin Islands Police Department (‘VIPD”) by way of a conviction.
 

 After a thorough review of the record, the undersigned found that the government’s evidence was sufficient to establish the elements of the offenses charged and the verdict was not against the weight of the evidence. In reaching that decision, the Court examined the incidents involving Christopher Jacobs, Cora Mannix, Alvarez Smith, and Jose Felix and found that the jury’s conclusions from the evidence were reasonable. Finally, although I found that the prosecutor’s remarks had been overzealous, the standard of review was whether the prosecutor’s remarks, taken in the context of the trial as a whole, were sufficiently prejudicial to have deprived the defendant of his rights to a fair trial.
 
 See U.S. v. Retos, 25
 
 F.3d 1220, 1224 (3d Cir.1994) (quoting
 
 United States v. DiPasquale,
 
 740 F.2d 1282, 1297 (3d Cir.1984)). This, I could not find after reviewing the remarks and the instructions given to the jury to neutralize any prejudice. Accordingly, Petitioner’s motion for judgment of acquittal or a new trial was denied on July 5, 2001. Petitioner’s judgment of conviction was entered on July 16, 2001.
 

 On appeal to the Court of Appeals for the Third Circuit (“Court of Appeals”), Petitioner argued that prosecutorial misconduct impermissibly tainted his trial; that his motion for severance was improperly denied by the District Court; and that the evidence introduced against him was insufficient to sustain his conviction. The Court of Appeals affirmed Petitioner’s conviction on June 12, 2002.
 
 United States v. Bates,
 
 46 Fed.Appx. 104 (3d Cir.),
 
 cert. denied,
 
 637 U.S. 962, 123 S.Ct. 389, 154 L.Ed.2d 316 (2002). This Section 2255 motion was timely filed on December 2, 2002, and the government responded in opposition thereto. Then, in August 2003, Petitioner sought and was granted leave to amend his § 2255 motion. There being no new arguments raised in Petitioner’s amended § 2255 motion, the government did not file a supplemental response.
 

 II. Discussion
 

 A. Issues
 

 Petitioner’s § 2255 motion raises the following issues:
 

 1) Whether Petitioner’s civil rights were violated, and conviction obtained, by the use of evidence illegally and unconstitutionally obtained from his Internal Affairs files.
 

 2) Whether the media was used to taint the jury pool.
 

 3) Whether Petitioner was maliciously prosecuted and persecuted.
 

 4) Whether there was sufficient evidence to sustain Petitioner’s conviction, particularly relating to acts committed against Christopher Jacobs, Cora Man-nix, Alvarez Smith, and Jose Felix.
 

 5) Whether the trial court erred in denying Petitioner’s request for mistrial based on inattentiveness of jurors.
 

 6) Whether guilty verdicts on Counts XVI (Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242) and XVII (Carrying a Firearm During
 
 *DCCLXXXII
 
 or in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)) are inconsistent.
 

 7) Whether the lack of disciplinary action against Petitioner by the Internal Affairs Unit proves that there was no probable cause to file a complaint, and, therefore, no evidence to support su-perceding charges on behalf of any of the alleged victims.
 

 8) Whether the prosecution failed to disclose evidence, namely exculpatory statements by Anna Jacobs, which would have created reasonable doubt.
 

 9) Whether there was prosecutorial misconduct in failing to disclose and call Anna Jacobs as a witness for the Government.
 

 10) Whether the indictment and conviction were obtained by perjury.
 

 11) Whether the indictment and conviction were obtained by intimidation.
 

 12) Whether Petitioner’s prosecution and detention are against the best interest of the public.
 

 13) Whether Petitioner’s conviction was obtained by collusion between the government and counsel for co-defendant Dean Bates.
 

 14) Whether the indictment and conviction were obtained by the use of investigators whose records were not provided.
 

 15) Whether co-defendant Dean Bates’ attorneys rendered ineffective assistance by failing to use exculpatory evidence which would have exonerated Bates and supported Petitioner’s case.
 

 16) Whether petitioner’s trial counsel, George W. cannon, Esq., provided ineffective assistance.
 

 Habeas review is an extraordinary remedy, and a Section 2255 motion simply is not a substitute for a direct appeal, nor may it be used to relitigate matters decided adversely on appeal.
 
 See Bousley v. United States,
 
 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citations omitted);
 
 United States v. Frady,
 
 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982);
 
 Sunal v. Large,
 
 332 U.S. 174, 178, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947);
 
 Gov’t of the Virgin Islands v. Nicholas,
 
 759 F.2d 1073, 1074-75 (3d Cir.1985). “For this reason,
 
 nonconstitutional
 
 claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings.”
 
 Stone v. Powell,
 
 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (emphasis added).
 

 The Court, therefore, notes at the outset that Petitioner’s nonconstitu-tional claims: use of media to taint the jury pool (issue 2), inattentive jurors (issue 5),
 
 [2]
 
 prosecution against the public interest
 
 *DCCLXXXIII
 
 (issue 13), and collusion between the government and counsel for co-defendant Dean Bates (issue 14) are procedurally barred. Petitioner does not allege that these claims are newly discovered. The Court also finds, as a preliminary matter, that Petitioner has failed to convince the court that he has standing to seek habeas relief on issue number sixteen (16). That is, Petitioner has no standing to argue that counsel for co-defendant Dean Bates’ rendered ineffective assistance by failing to use exculpatory evidence which would have exonerated Bates and supported Petitioner’s case. Moreover, to the extent an ineffective assistance of counsel argument is intertwined in these issues, the Court finds that George W. Cannon, Esq. rendered the level of competent assistance contemplated by
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 B. Applicable Standards
 

 Section 2255 permits a court to afford relief “upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.” 28 U.S.C. § 2255. Even an error that may justify a reversal on direct appeal will not necessarily sustain a collateral attack.
 
 See United States v. Addonizio,
 
 442 U.S. 178, 184-85, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).
 

 “Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either ‘cause’ for the failure to comply with the procedural requirement and that actual ‘prejudice’ would result from the alleged constitutional violation, or that he is ‘actually innocent.’”
 
 Bousley,
 
 523 U.S. at 622, 118 S.Ct. 1604 (1998) (internal citations omitted);
 
 see also United States v. Jenkins,
 
 333 F.3d 151, 155 (3d Cir.2003);
 
 United States v. Sanders,
 
 165 F.3d 248, 250 (3d Cir.1999). Courts enforce the cause and prejudice rule in part to conserve judicial resources by requiring state or federal prisoners who seek habeas relief to present their claims to the venue initially available.
 
 Sanchez v. Miller,
 
 792 F.2d 694, 698 (7th Cir.1986) (citing
 
 Engle v. Isaac,
 
 456 U.S. 107, 126-29, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).
 

 Regarding actual innocence, the Court of appeals states that:
 

 To establish actual innocence, “a habeas petitioner must ‘persuade! ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.’ ” Actual innocence means “factual innocence, not mere legal insufficiency.” The Supreme Court has required a petitioner “to support his allegations of constitutional error with
 
 new reliable evidence
 
 — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.” “Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.”
 

 Sweger v. Chesney,
 
 294 F.3d 506, 522-23 (3d Cir.2002) (internal citations omitted).
 

 To establish that counsel provided constitutionally inadequate assistance, Petitioner must satisfy the two-part test enunciated in
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052. First, Petitioner must show that, considering the facts of the case, his counsel’s challenged actions were unreasonable.
 
 Id.
 
 at 690, 104 S.Ct. 2052. The Court must review Petitioner’s claim under the “strong presumption that the counsel’s conduct falls within the wide range of reasonable professional assistance; that is,
 
 *DCCLXXXIV
 
 [Petitioner] must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ”
 
 Id.
 
 at 688, 104 S.Ct. 2052.
 
 [3]
 
 Second, Petitioner must show that he was prejudiced by counsel’s conduct in that there is a “reasonable probability” that deficient assistance of counsel affected the outcome of the proceeding at issue.
 
 Id.
 
 at 694-95, 104 S.Ct. 2052. This Court is also mindful that
 

 given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and ... the Constitution does not guarantee such a trial.
 

 United States v. Hasting,
 
 461 U.S. 499, 508-09, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983);
 
 Engle,
 
 456 U.S. at 133-34, 102 S.Ct. 1558;
 
 see also Marshall v. Hendricks,
 
 307 F.3d 36, 85 (3d Cir.2002) (“[T]he court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel.”).
 

 C. Ineffective assistance of counsel
 

 Strickland
 
 requires that the Court review Petitioner’s claim under the “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” 466 U.S. at 688, 104 S.Ct. 2052. To determine ‘cause’ for Petitioner’s failure to raise these issues on direct appeal, the Court looks to Mr. Cannon’s handling of this matter to determine whether he failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.
 
 Murray,
 
 477 U.S. at 486, 106 S.Ct. 2639 (“[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it does not constitute cause for procedural default.”)
 

 1. Whether Petitioner’s Fourth and Fifth Amendment rights were violated, and conviction obtained, by the use of evidence illegally and unconstitutionally obtained from his Internal Affairs files.
 

 On May 21, 1999, a subpoena to testify before the grand jury was issued to the Virgin Islands Police Department via then Commissioner, Franz Christian. The subpoena specifically sought the Internal Affairs records of Petitioner and his co-defendant, Dean Bates. (Government’s Response to Petitioner’s Writ of Habeas Corpus (“Response”) at 7, Ex. A.)
 

 Petitioner argues that his civil rights were violated when statements he made during the course of Internal Affairs investigations were used against him although he had been advised,
 
 inter alia,
 
 that
 

 replies to such questions will not be used by the Virgin Islands Government in any criminal prosecution against you, but may be used in connection with Departmental disciplinary proceedings.
 

 (Motion to Vacate, Set Aside, or Correct Sentence (“Mot. to Vacate”) at Ex. 4.) Petitioner argues that his conviction was obtained by way of an unconstitutional search and seizure of his Internal Affairs files in violation of the Fourth Amendment to the United States Constitution, and in violation of his Fifth Amendment right against self incrimination.
 

 
 *DCCLXXXV
 
 The government argues that the files subpoenaed contained a number of different documents — including complaints by citizens, and Petitioner does not have a “constitutional right to bar the VIPD from providing these statements of a third party to a grand jury” under a valid subpoena. (Response at 8.) In addition, relying on
 
 United States v. Miller,
 
 425 U.S. 435, 440, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the government argues that no Fourth Amendment search and seizure violation is triggered here where the documents in question were not Petitioner’s and they did not reference any of his compelled statements. With regard to alleged Fifth Amendment violations, the government argues that Petitioner “is accurate in stating that he had an expectation that his statements to the Internal Affairs Bureau would not be used against him. They were not. That expectation does not extend to the statements of others.” (Response at 10.) Simply put, the government argues that Petitioner has failed to show that the production of Petitioner’s Internal Affairs file was tantamount to self incrimination.
 

 a. Fourth Amendment
 

 In
 
 United States v. Miller,
 
 the Supreme Court states that “no interest legitimately protected by the Fourth Amendment” is implicated by governmental investigative activities unless there is an intrusion into a zone of privacy, into “the security a man relies upon when he places himself or his property within a constitutionally protected area.” 425 U.S. at 440, 96 S.Ct. 1619 (quoting
 
 Hoffa v. United States,
 
 385 U.S. 293, 301-02, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966)). Here, the documents sought in the subpoena were not Petitioner’s private papers.
 

 Instead, the government relied upon complaints and statements given to Internal Affairs-by persons other than Petitioner and his co-defendants.
 
 (See, e.g.,
 
 Tr. Vol. Ill at 109, 169-71, 174-75, 194-97, 205, 215, 219; Vol. V at 28, 40, 59 71-72,84, 92, 165-66, 174-75.) In addition, Petitioner has not cited, nor has the Court found, any legal basis upon which Petitioner may claim a right, protected by the Fourth Amendment, to bar the use of these third party statements. As such, Mr. Cannon’s decision not to raise this issue on appeal does not amount to ineffective assistance.
 

 b. Fifth Amendment
 

 The Supreme Court of the United States has made it clear that the Constitution does not bar the government from compelling an officer to “answer questions specifically, directly, and narrowly relating to the performance of his official duties.”
 
 Gardner v. Broderick,
 
 392 U.S. 273, 278, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). “Rather, the Constitution is violated only when the compelled statement, or the fruit of that statement, is used against the officer in a subsequent criminal proceeding.”
 
 Grand Jury Subpoenas v. United States,
 
 40 F.3d 1096, 1102 (10th Cir.1994) (citing
 
 Garrity v. New Jersey,
 
 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)).
 
 “Garrity’s
 
 protection, therefore, acts to immunize these compelled statements, as it prohibits their subsequent use against the officer so as not to offend the Fifth Amendment privilege.”
 
 Grand Jury Subpoenas,
 
 40 F.3d at 1102-03.
 

 When the Court previously addressed, and denied, Petitioner’s motion to dismiss based on immunity, the undersigned found as follows:
 

 Upon consideration of the matter, the Court finds that the Government instituted sufficient internal procedures for isolating any compelled and immunized statements by Defendants from use by the individuals responsible for prosecution of the instant case. The Govern
 
 *DCCLXXXVI
 
 ment formed a team, called the
 
 “Garrity
 
 Team,” that served the purpose of siphoning out and isolating any immunized information considered tainted under
 
 Garrity ...
 
 and its progeny.... Prosecutors and law enforcement personnel involved in the investigation and prosecution of the case were not permitted to review files isolated by the
 
 Garrity
 
 team or discuss any removed items with members of the team.
 

 (Order dated July 3, 2000.)
 
 Garrity
 
 protections were in place, and there being no newly discovered evidence presented on this issue, the Court maintains its earlier ruling.
 

 The Double Jeopardy Clause of the Fifth Amendment commands that “[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb.” The Supreme Court has held that “[t]he Double Jeopardy Clause ... is not a bar to the later criminal prosecution because the administrative proceedings were civil, not criminal.”
 
 Hudson v. United States,
 
 522 U.S. 93, 95-96, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997);
 
 cf. United States v. James,
 
 78 F.3d 851, 855 (3d Cir.1996) (“The double jeopardy clause are not affected by the forfeiture of the property through administrative proceedings.”). Here, the cross-examination of defense (Bates) witness Daria Byron, an Internal Affairs agent, summarized the procedures in Internal Affairs as follows:
 

 BY MR. WILLIAMS:
 

 Q. Ma‘am, you were asked by Attorney Webster whether Internal Affairs acts as a prosecuting arm of the Police Department, correct?
 

 A. Yeah.
 

 Q. But, in fact, prosecuting, you can’t prosecute the officers for crimes, can you?
 

 A. No.
 

 Q. The hearing is for internal problems; is that correct?
 

 A. Correct.
 

 Q. And so they’re not subject to criminal liability, are they?
 

 A. No.
 

 Q. Sorry?
 

 A. Not in our hearings, no.
 

 Q. So no matter what the charge is, they can’t go to jail, can they?
 

 A. No.
 

 Q. And when you are finished with the Internal Affairs hearing, you don’t routinely give that information over to real prosecutors, do you?
 

 A. No.
 

 Q. That’s private information, is it not, generally?
 

 A. Yes.
 

 (Tr. Vol. XI at 208.) Without question, the Internal Affairs proceedings were civil in nature, and jeopardy did not attach.
 

 Finally, the Court simply cannot find, as Petitioner requests, that the lack of disciplinary action against him by the Internal Affairs Unit proves that there was no probable cause to file a complaint, and, therefore, no evidence to support su-perceding charges on behalf of any of the alleged victims. Again, the Court of Appeals has addressed and affirmed the sufficiency of the evidence to support Petitioner’s conviction. To the extent Petitioner raises this issue in the context of the Double Jeopardy Clause, the Court need not look far to note that:
 

 In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. In a nonjury trial, jeopardy attaches when the court begins to hear evidence. The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is “put to trial before the trier
 
 *DCCLXXXVII
 
 of facts, whether the trier be a jury or a judge.”
 

 Serfass v. United States,
 
 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Petitioner was not placed in jeopardy during the administrative proceedings, therefore, jeopardy could not attach in the subsequent criminal prosecution. There being no appealable issue, Mr. Cannon’s decision not to raise this issue on appeal does not amount to ineffective assistance.
 

 2. Selective or Malicious Prosecution
 

 Petitioner’s full argument on this issue is as follows:
 

 My Internal Affairs files were used to identify individuals I ahd [sic] come in contact with as a police officer and even when other officers were involved in the alleged incident, I was singled out for prosecution. Malicious persecution was so intent that U.S. Marshall [sic] Linda Valerino perjured herself before a grand jury and on the witness stand and the alleged victim, Duval McLaughlin, confirmed her perjury when he testified that what she alleged was untrue. Yet hers and many similar charges were made and levied against me in order to protray [sic] a negative image of me to the public in which I was to be tried. Many superseding charges had exceded [sic] the statu[t]e of limitation^] even when they were being filed, and ultimately had to be dismissed, yet I was still charged with them and they were used to paint me as a criminal worthy of some kind of conviction.
 

 (Mot. to Vacate at 4.) In
 
 Government of the Virgin Islands v. David,
 
 741 F.2d 653, 655 (3d Cir.1984), the Court of Appeals states that
 

 “the conscious exercise of some selectivity in enforcement [of a statute] is not in itself a federal constitutional violation” so long as “the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.”
 

 (quoting
 
 Oyler v. Boles,
 
 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). Where, as here, the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.
 
 See Bordenkircher v. Hayes,
 
 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Petitioner has failed to set forth a viable claim of unconstitutional selective prosecution. Again, Mr. Cannon’s decision not to raise this issue on appeal does not amount to ineffective assistance.
 

 3. Whether the indictment and conviction were obtained by perjury and intimidation of witnesses.
 

 Petitioner alleges that Deputy U.S. Marshal Linda Valerino and government witnesses Anna Jacobs, Police Officer Andre Hector and John Bell gave perjured testimony before the Grand Jury and at trial. In
 
 United States v. Coleman,
 
 230 F.2d 261, 263 (3d Cir.1956), the Court of Appeals affirmed the District Court’s order denying § 2255 relief where petitioner in asserting a conspiracy to procure and use perjured testimony gave “no indication of anything other than what was considered at his trial.” Similarly, Petitioner has presented no newly discovered evidence. The jurors heard the allegedly inconsistent and perjured statements and had an opportunity to weigh the credibility of each witness. Jurors were also instructed,
 
 inter alia,
 
 that they were
 

 not limited to the bald statements of the witnesses .... On the contrary, you are permitted to draw from the facts which you find to have been proven, such reasonable inferences as seemed justified to you in light of your experience and the common knowledge and experience of
 
 *DCCLXXXVIII
 
 mankind.... [Y]ou may be guided by the appearance of the witnesses, the conduct ... or by the manner in which the witness testified, or by the character of the testimony given, or by evidence to the contrary of the testimony given.... Consider each witness’ intelligence, motive, state of mind, demeanor and manner while on the stand.... It is your province, as jurors, to determine credibility ....
 

 (Tr. Vol. XII at 92-93.) On the issue of intimidation of Officer Hector, the government contends that because of its legal obligation to confirm evidence that may be used to impeach its witness, Officer Hector’s background was discussed. The Court finds no basis for habeas relief on this ground. Petitioner has not established cause for the failure to raise this issue on direct appeal, because Mr. Cannon’s decision not to raise this issue on appeal was a reasonable and sound legal decision.
 

 4.
 
 Brady
 
 and
 
 Giglio
 
 Material
 

 This discussion will address the allegations raised in issues 8, 9 and 14. Petitioner argues that the government: 1) failed to disclose evidence, namely exculpatory statements made by Anna Jacobs to Internal Affairs which would have created reasonable doubt; 2) failed to call Ms. Jacobs as a witness; 3) failed to present exculpatory Internal Affairs statements made by co-defendant Reynaldo Philbert and petitioner’s own statement to Internal Affairs both regarding the Christopher Jacobs incident;
 
 [4]
 
 4) failed to provide records of Detective Laurie Hodge and F.B.I. Agent Roberto Enriquez, and finally 5) the government protected Detective Hodge by “refusing to allow her to testify.”
 

 The government argues, on the other hand, that Petitioner is not entitled to habeas relief for the following reasons:
 

 1) Under
 
 United States v. Casseus,
 
 282 F.3d 253, 257 (3d Cir.2002), petitioner does not have the right to full discovery of the government’s case.
 

 2) That
 
 United States ex rel. Drew v.
 
 Myers, 327 F.2d 174, 183 n. 16 (3d Cir.1964) makes it clear that the government does not have a duty to call any witness.
 

 3) That there was no failure to disclose where Ms. Jacobs was on the government’s witness list that was provided to the defense.
 

 4) That the government need only provide
 
 Giglio
 
 materia if a witness will be called to testify at trial.
 

 5) That in accordance with
 
 Garrity,
 
 the government did not review the Internal Affairs statements of any defendant, and, therefore, would not have been able to refer to their statements in its casein-chief.
 

 6) That Detective Hodge did not have exculpatory information, was on its witness list and available to testify at all times, and, as with Ms. Jacobs, the government simply made a tactical decision not to call her as a witness.
 

 7) That there was nothing in the personnel file of F.B.I. Agent Enriquez that required disclosure, and any alleged exculpatory evidence was given to the defense prior to trial.
 

 (Response at 24-26.)
 

 In
 
 Riley v. Taylor,
 
 277 F.3d 261, 301 (3d Cir.2001), the Court of Appeals states that to put forth a valid claim under
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):
 

 
 *DCCLXXXIX
 
 [A] plaintiff must show that the evidence was (1) suppressed, (2) favorable, and (3) material to the defense.
 
 See United States v. Perdomo,
 
 929 F.2d 967, 970 (3d Cir.1991). Evidence is material if there is a reasonable probability that the outcome would have been different had the evidence been disclosed to the defense.
 
 See United States v. Bagley,
 
 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Evidence that may be used to impeach may qualify as
 
 Brady
 
 material.
 
 See Kyles v. Whitley,
 
 514 U.S. 419, 445, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995);
 
 Bagley,
 
 473 U.S. at 676, 105 S.Ct. 3375, 87 L.Ed.2d 481.
 

 Likewise, in
 
 United States v. Milan,
 
 304 F.3d 273, 287 (3d Cir.2002), the Court of Appeals sets forth the requirements under
 
 Giglio v. United States,
 
 405 U.S. 150, 154-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) as follows:
 

 [T]he government must disclose materials that go to the question of guilt or innocence as well as materials that might affect the jury’s judgment of the credibility of a crucial prosecution witness. However, to warrant a reversal, the withheld evidence must be material, that is, of sufficient significance that its suppression deprived the defendant of a fair trial.
 

 (internal citations omitted). Having thoroughly reviewed Petitioner’s claim and the government’s response, the Court finds that there were no
 
 Brady
 
 or
 
 Giglio
 
 violation here. Mr. Cannon, therefore, provided constitutionally adequate assistance in deciding that this was not an issue to be raised on direct review.
 

 D. Sufficiency of the Evidence
 

 Petitioner also challenges the sufficiency of the evidence. Intertwined in that argument is his assertion that he was charged under inconsistent counts (XVI and XVII) (issue 6). He argues that because police officers are required to carry a licensed weapon at all times, his conviction under Count XVI which included the charge that he was acting “under color of law” was inconsistent with his conviction under XVII which charged that he possessed and carried a weapon “during a crime of violence.”
 

 The government, relying on
 
 United States v. Contreras,
 
 950 F.2d 232, 241 (5th Cir.1991), argues that “Congress intended section 924(c) to apply to police officers who ‘abuse that privilege [of being licensed to carry a firearm] by committing a crime with the weapon.’ ” The government further contends that Petitioner’s argument is without merit because his use of the firearm “was central to the offense in light of his brandishing and threatening the victim with it as he violated his civil rights.” (Response at 19.)
 

 In
 
 United States v. Vastola,
 
 989 F.2d 1318, 1330 (3d Cir.1993), the Court of Appeals held that “jury verdicts cannot be set aside solely on the ground of inconsistency.”
 
 Vastóla
 
 also states that:
 

 Where there has been an inconsistent verdict, the criminal defendant is protected against jury irrationality and error by a review of the sufficiency of the evidence. “Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt.”
 

 Id.
 
 at 1331 (quoting
 
 United States v. Powell,
 
 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). With regard to Petitioner’s claims that the evidence presented by the government was insufficient to support his conviction (issue 4), the Court will not again review this issue which was decided on direct appeal.
 
 Bates,
 
 46 Fed.Appx. at 109-10 (“[W]hen viewed in the light most favorable to the government,
 
 *DCCXC
 
 the evidence adduced certainly serves to support the convictions procured.”).
 

 III. CONCLUSION
 

 Having reviewed the record under this presumption, the Court finds, without hesitation, that counsel’s performance did not run afoul of
 
 Strickland
 
 on any issue raised in this Section 2255 motion. In fact, counsel performed with a great deal of competence, secured the dismissal of numerous counts, and made timely and cogent objections. Petitioner has not overcome the presumption that, under the circumstances, the challenged actions of Mr. Cannon might be considered sound trial strategy. Having failed (on all issues raised) to demonstrate the Mr. Cannon’s actions were unreasonable, Petitioner cannot survive this
 
 Strickland
 
 analysis. Petitioner has also failed to establish that the ineffective assistance of Mr. Cannon constitutes sufficient cause to overcome his procedural default. Because cause has not been shown, the Court need not proceed to examine prejudice. Lastly, although Petitioner maintains his innocence, he has not met the burden of proof for “actual innocence” as set forth in
 
 Sweger.
 
 For the reasons stated, Petitioner’s motion to vacate, set side, or correct sentence pursuant to 28 U.S.C. § 2255 shall be denied.
 

 ORDER
 

 THE COURT, having duly considered the premises in the Memorandum Opinion of even date, it is hereby
 

 ORDERED that Petitioner’s motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED; and further
 

 ORDERED that NO CERTIFICATE OF APPEALABILITY shall issue; and finally
 

 ORDERED that the Clerk of the Court shall CLOSE this file.
 

 [1]
 

 . Because I write only for the parties in this matter, I will dispense with a full recitation of the facts and limit this discussion only to those facts necessary to reach my decision.
 

 [2]
 

 . There is no consensus among the circuits regarding whether the issue of an inattentive juror must be raised on direct appeal or in a collateral motion under 28 U.S.C. § 2255. In an unpublished decision,
 
 United States v. O’Hara,
 
 the Court of Appeals for the Third Circuit addressed an inattentive juror claim, albeit summarily, on appeal. 54 Fed.Appx. 88, 90 (3d Cir.2002) (holding that appellant’s claim that a juror should have been excused for sleeping during the trial is unsupported by the record);
 
 see also United States v. Hester,
 
 489 F.2d 48, 50 (8th Cir.1973) (affirming District Court's dismissal of 28 U.S.C. § 2255 motion where petitioner alleged for the first time that he had not been afforded a fair trial because a juror allegedly slept through portions of the trial. A defendant, failing to apprise the trial court of this alleged misconduct, should not be allowed to inject “a defect into the trial, and later claim its benefit.”) (quoting
 
 United States v. Curry,
 
 471 F.2d 419, 421-422 (5th Cir.1973)).
 
 Compare United States v. Binion,
 
 55 Fed.Appx. 369, 371 (7th Cir.2002) (internal citation omitted) ("We do not address the sleeping juror and ineffective assistance claims on direct appeal because the record in this case lacks evidence relevant to those claims.... If ... in fact [he can] prove those claims, a motion under 28 U.S.C. § 2255 in the district court would be the proper channel.”).
 

 [3]
 

 .
 
 See also Murray v. Carrier,
 
 477 U.S. 478, 487, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (rejecting a subjective test for determining ''cause” for procedural default, in part because under such a rule "federal habeas courts would routinely be required to hold evidentiary hearings to determine what prompted counsel's failure to raise the claim in question”).
 

 [4]
 

 . Petitioner conversely argues in this § 2255 motion that use of his internal Affairs statements constitutes a violation of his constitutional rights.